Good afternoon. The first case on this afternoon's docket is the case of Tim Gray, the marriage of Timothy Pavolco versus Maria Pavolco. And we have Mr. Sean Lyle and Paul Deappellant and we have Mr. Alan Kretnor for the appellate. So you may begin when you're prepared to. Please be clear. My name is Sean Lyle, as the court indicated, and I am the attorney for the appellant, Maria Pavolco, now Maria Evans. And I will be brief in my remarks, as I believe both of the positions of the parties have been set forth very accurately in the respective briefs. Let me ask, has your client moved to Tennessee? Yes, Your Honor. Has there been a petition to modify the visitation schedule? We're holding off on that talk. This matter is resolved, Your Honor. Mr. President, I have discussed that in the hall, the oral argument. To begin, there are really only two issues before the court, actually one issue based upon two different standards. Whether or not the trial court committed a reversible error in it either ruled an abuse of its discretion or ruled against the manifest way of the evidence. And we are maintaining that it ruled against the manifest way of the evidence and abused its discretion. And since the abuse of discretion standard is more difficult to overcome, I will begin with that. The abuse of discretion standard basically says that in order to reverse a trial court's decision, which is given great deference at the appellate court level because the trial court is in the best position to observe all the evidence, it must be such that no reasonable person could concede that the trial court ruled right. With the proviso that the reasonable person in question in circumstances would be someone who had the knowledge and the facts available to the trial court. In other words, an Illinois attorney or judge who is familiar with the applicable precedents and statutory code. In this case, we are maintaining that obviously there were changed circumstances amongst my client and the parties. And we do not argue that there were not changed circumstances. There were going to be. She had filed a petition to remove and that was going to be changed circumstances in and of itself. And subsequent to that, Mr. Pavolko filed for a motion to modify. But we do take issue with what the trial court's decision is. As the court is aware, a mere change in circumstances isn't enough. It has to be a change in circumstances that affect the child. And the record does not reflect in any way that the relationship between Mrs. Evans and the children was ever affected by the decision to move or any of the evidence that was presented in trial. And as I cited in my brief, change in conditions in and of itself is not sufficient for modification in custody without finding that such change in conditions affected the welfare of the child. And that was in Brandt v. Brandt, which was out of the Third Appellate District, which is not controlling, but it is persuasive. What the record reflected here was there was contested divorce. The court at that time heard evidence, determined in its wisdom that the best place for the children was with Maria, their mother, placed them with them, approximately two years passed, and then she filed a motion to remove the children from the state of Tennessee. And immediately thereafter, Mr. Pavolko filed his motion to modify. Now there's some confusion as to why he waited the two years. He indicated he thought that was the state of the law. But it does raise an inference that he did so because she filed the petition to remove the children. Does that mean that you can't ever do that? If somebody raises the issue at the time that she's seeking the removal, that you can't seek to change custody? No, Your Honor. It doesn't. But of course, she's got to be right to file it. But it does raise the inference that that was the reason that he did do so. And it's still, the burden is on him to prove by clear and convincing evidence that not only are there changed circumstances, but the changed circumstances are affecting the welfare of the children. It's not in their best interest unless the custody need to be modified on that basis. And the case that I think is most roughly analogous to this, and I cited it extensively in my brief, is Wyckoff v. Wyckoff out of the 4th District, which again, not controlling, but I believe is persuasive. And it even goes so far in Wyckoff to say, similar issues frequently arise in cases where there's a petition for leave to remove a child from the state under Section 609 of the Act. And that's basically what happened here. And in Wyckoff, the court said, the wife and mother cannot be criticized for her decision to remarry and move to a different location. In Wyckoff, they were moving a significant distance within the state of Illinois and not out of it, but circumstances were still similar to the ones we have in the instant case. And then the absence of any showing that she did so in an attempt to frustrate visitation and between the children and the father, that wasn't a sufficient basis to modify custody. How far away is she moving? Three hours? Four hours? In this case, Your Honor? Yeah. Five hours? I believe that is accurate. It's approximately a three and a half hour drive. Four and a half. Four and a half hours. Are there any arrangements made for her to send the children back? Well, the record reflects that she was willing to do six months with the father and six months with her. And that was not acceptable to the father. She was more than willing to accommodate him in terms of visitation in any way that she could. She just didn't want to give up total custody. What was the present visitation schedule? As I indicated to Your Honor, we're actually reserving that. We had some holiday visitation over the Christmas holiday that was done. We're waiting for the resolution of this issue to set the thing in stone. Okay. So there hadn't been any official visitation schedule set up? No. Neither right now, Your Honor. There has not been. She had visitation over the Christmas holiday, and due to the agreement of both parties' counsel in this matter, we're waiting to resolve it before we set anything in stone. In the original divorce decree, there was no visitation schedule set up? No. The original visitation schedule, I believe it was fairly standard every other weekend, and I think one day a week on the regular week, on the off one. And if she moved down to Tennessee, did she offer to bring the children back so that original schedule could be maintained? Yes, she did. She indicated that she would accommodate him in any way that she could in giving him livable and reasonable visitation. She did not have my reading of the record. She did indicate that she would accommodate him in any way to maintain a relationship with him. She would be willing then, assuming the court throws out both of the petitions, she would be willing to bring the children back for the father to exercise visitation and pick the children up then? I believe so, yes, Your Honor. All right. As I was saying, there was evidence that changed circumstances presented throughout the trial court proceeding, and that much is not disputed. What is a dispute with my client is that there was ever any showing that there was a change in circumstances that affected the relationship between her and the children. There was evidence presented at the trial court level that indicated that there was a lot of acrimony between father and mother in regards to them getting along, and there was some indication that my client did not maintain contact with Mr. Pretner's client as she should have. However, I would note that the appropriate remedy for that is an official rule to show cause and possible finding of contempt as opposed to a modification of custody. That in and of itself is not a basis for a change of custody, either under the abuse of discretion standard or under the manifesto evidence standard, which I'll get to in a moment. Basically, let me ask you, you said there was no change, there was a change in circumstances, but it didn't affect the best interest. The trial court heard evidence from Ms. Bobby Campagna that was pretty compelling, it seemed to me, about what she observed when the children were in Maria's custody, about her lack of attention, lack of taking care of them. How do you overcome that when the trial court heard that kind of evidence from a friend of hers? Well, I think that the response to that, Your Honor, is Mr. Campagna said, while she was a friend of Maria's, her husband was also good friends with Mr. Provolco, and that relationship far predated the one with Maria. And I think that what that really reflected was, I mean, again, what it came down to, as you said, was a lack of attention towards the children, perhaps an emotional detachment in interacting with them, but there was never anything concrete in that. I believe she also testified that she did provide, that she'd always been the primary caregiver since she knew the parties, that they'd always been fed, that they'd always been clothed, that she did seek medical attention for them. In fact, they kind of tried to have it both ways on that. At times they claimed she would take them to the emergency room unnecessarily and then kind of turn around and say, well, she also doesn't take adequate care of them. I mean, she testified to all those things. Let's talk about that. There was allegations that the older son, her older son, would push him and poke him, and there's lots of bruising on these little children. Would you agree with that? I would, Your Honor. And she said that that was from daycare. Is that correct? I believe so. Was there a report made to the daycare or an investigation? The record does not reflect that, Your Honor, and I was not counsel at the trial court level so I cannot say definitively whether it was or not. What I can say is the record does reflect that these allegations of rough treatment and inappropriate touching by the older son was investigated by the Department of Child and Family Services, and it was determined to be unfounded. These are the professionals who investigate these kinds of matters. They're the ones who are paid to look into it. They looked into it and said there's nothing to this. Therefore, I think it comes down to an allegation by a witness, which, of course, the trial court is allowed to take into consideration however it does. My argument is, as said, she also testified that it was been her care, that she provided food, clothing, shelter, medical attention, and was going towards her intellectual development, and I don't know if it was Bobbie Companion who indicated, I believe it was the daycare worker herself, who indicated that she had sought speech therapy for them because they were somewhat slow in developing their vocal skills. So I think the record reflects on that, that while third parties may have thought that she was a emotionally distant mother, they also at the same time conceded that she was doing the basic necessities of raising a child, providing shelter, food, clothing, etc. And seeing as how this had already had a chance to be addressed in the initial divorce decree, absent a showing of some negative effect upon the children, which isn't made from the record that I can see, I don't believe any reasonable person could concede that the trial court took the proper attention of 602 and 610 in effect, specifically the presumptive policy that a divorce decree is supposed to be final for public policy reasons. We don't want people running into court every two years trying to reverse a divorce decree because the parents can't get along. I think that's largely what the record reflects in this case. And again, I'm going to wrap this up here because I think it's largely addressed in the brief. I don't think that any reasonable person who had the proper training of an Illinois lawyer or an Illinois judge who looked at case law and looked at statutory requirements could say that the judge made the right decision on this. I don't think any reasonable person in that circumstance could come to that conclusion, and therefore I would argue the trial court abused its discretion. By the same standard, under the manifest way of the evidence doctrine, it's a much lower standard in that basically the reviewing court needs to simply come to the conclusion that the evidence clearly shows the opposite result should have been reached. And for the reasons that I set forth earlier, I believe that the opposite conclusion should have been reached as set forth on the record. The parents may not have gotten along. There may have been acrimony between them. My client may have been less than... Well, she probably did not comply as strictly as she should have with the court's orders to make sure that Mr. Pavolco had a means of accessing her to get in touch with the children. She probably should have been a little more stringent in that. The record does reflect that, but she also had an explanation for that. She felt that she was intimidated by him. I think the record does reflect... But she was told to give a different number than somebody that he could contact. Did she do that? She said that she made efforts to do so, and that is why I'm saying she probably should have been a little more stringent in that regard, Your Honor. She probably should have made more of an effort to make sure that there was an alternative third party whereby he could have contacted them so there wouldn't have been acrimony. And she didn't, and I agree with that. She probably should have. But I still maintain that that is not the basis for a modification of custody. The basis for that, the remedy, is for the court to say, okay, I'm going to give you an opportunity to show why you should be held in contempt on this. If she couldn't, then hold her in contempt. It's not a basis for modifying the custody, and that's what the court did in this case. And for the reasons I set forth previously and in my brief, I think that obviously if you can give use of discretion standard, then the threshold is much lower than the manifest way to the evidence. And I think the record reflects that the children had always been in my client's custody, regardless of third party opinions of the manner in which they were emotionally involved with their mother. Their mother provided food for them, shelter for them, medical care for them, was preparing to prepare for their education, and basically met all the requirements of interacting with their children that society accepts. And it expects a parent. Above and beyond that, I don't believe the record reflects any kind of negative effect between her and her children. I anticipate that the other side will argue that, well, what about these videos showing the children's emotional distress at the time of the visitation exchanges? I maintain that's exactly what they show, emotional distress between the children at a time of the custody exchange. I want to make sure I understand you. You're saying that your client is ready, willing, and able to make the children available in Montgomery County for the visitation that's been set up, alternating weekends and whatever else? She absolutely indicated that on the record, Your Honor, and she's never indicated anything other than that to me. Okay. Thank you. Thank you, Mr. Liles. Is that the opportunity to move on, Mr. Kretner? May it please the Court. Counsel? The Court's order, which I have supplemented today and made a part of my brief and appendix, is a 10-page order that is so clear and precise regarding the factors the Court relied on in making this decision that I don't think that I can argue a case any better than what the Court's case argued. As a matter of fact, when I did my brief, I tried to fit the Court's order into my brief, but it turned out it was too many pages. So I thought counsel You're allowed to attach as an appendix, and you have filed it now. Yes. It's a motion to supplement, and that's been allowed. Thank you. I appreciate that. I think the Court's order is plain and precise. I want to hit on a few things. Counsel mentioned the six-month thing. He relies heavily on her offering six months. The fact is my client felt that it was necessary to change custody for the best interest of his two boys. And six months on and six months off It's just coincidental that this was 30 days after the petition for removal was filed? What do you mean by that? Well, I mean You're talking about filing our petition? Right. It wasn't coincidental. As a matter of fact, what's part of the record is that my client was talking about filing the petition long before that. As this Court knows, though, it's expensive to hire a lawyer in order to do these things. That's what I mean. It was coincidental that the petition for change of custody was filed 30 days after the petition for removal was filed? I don't think it was coincidental. I think it was It was intentionally filed in response to the No, it was not intentionally filed. It was in response to them. Okay. I agree with the Court. Okay. I apologize. He had intended to do this after the two-year date was up, which was in July. The two-year date was up in July. He eventually filed it. I think it was in August or September. It was shortly after. So it was just coincidental? Yes. Okay. I mean, if the Court means that he intended to do it notwithstanding the fact that she filed a petition to remove, that is the case, yes. Even if he did, there's nothing that prohibits it? It doesn't make any difference. No, it doesn't. And, you know, I want to say this. The Court mentioned the move is a minor factor here. That is a factor, as the Court noted, but it's a minor factor in the Court's reason for changing custody, the trial court's reason for changing custody, a very minor factor. The Court relied on a lot of other things. As a matter of fact, the Court relied on Numbers 3, I think, and 8 under 602, the interrelationship between the parties. That was a big issue. It was a major issue in the case. And, you know, Tim's testimony during the trial was, basically, Maria keeps the kids alive. That's basically what she does. The tapes were telling. They were very telling. I took them home and watched them, and my wife heard it from upstairs and made a comment to me. But they were very telling. But Bobbie Jo Kapania's testimony was most telling. She testified before the tapes were ever shown. She explained to the Court what she saw. And Tim went to her after he filed his petition and said, you know, you're her friend. Is there anything you can tell me about what's going on? And she filed, she signed that affidavit that's in the Court record. I mean, it's very detailed about the things that she witnessed. And that's, those are the things the Court relied on. Ed Wardle being in the picture. You know, my client testified during the trial that he, when they were married, he offered to Maria, let's go see your son. You know where he's at. He's in the United States. Let's go see him. She didn't want to. But then after they divorced and she had testia of other two children, somehow she got testia of Ed Wardle. And Ed Wardle was 10 years older than these two boys. And he was mean to them. I mean, he was. You would agree that there's a presumption in favor of the present custodian in these cases. Absolutely. And it has to be compelling and overwhelming evidence. Absolutely. I think the Court's order makes a finding that is compelling. You know, this issue of what is the standard, manifest weight of the evidence or abuse of discretion, it's very interesting. And I mentioned a second district case that sets out what it thinks should be the rule. It was dealing with the issue of dissipation. But it said that the Court should apply the manifest weight of the evidence standard to the facts that the Court determined occurred during the case. And then apply the abuse of discretion standard to the final finding. In this case, that would be the change of custody finding. And I thought that the second district's explanation was probably one of the better explanations that I've seen. The standard that applies is confusing based on case law in our district as well as other districts. This may be a reason for the Court to take some action in regard to that and maybe publish this opinion to try to clarify what the standard is or how the standard should be applied. But in this case, I don't think the Court abused its discretion, nor do I think the Court's decision was against the manifest weight of the evidence. I think the evidence was clear, and I think the Court explained that well in its order. And it's hard for me to go over that. Counsel relies on the Wyckoff case. If the Court reads that case, it will find that there are very few facts in the Wyckoff case mentioned in the case itself, other than the child wanted to stay with her mother and the GAL recommended that the child stay with his mother. But the Court went ahead and ordered a change in custody. It was a two-to-one decision. One judge dissented, and in his dissent, he said the Court's order sets out factors that show that there was a substantial change in circumstances and that it would be in the child's best interest that custody be changed. So that wasn't a close case, or that was a close case. I think the Nochi case, the Fifth District case, is more telling because it mentions in the case that the mother did things considering herself first and her children second. And that was the Court's main impetus in its ruling in that case, I believe. There are a lot of facts involved. She was married four or five different times, and no case is going to be directly on point on the facts. No cases. Every case is different than I've had in these types of situations. But the fact is Maria was more concerned about herself and what she wanted over her children. Her children were basically, according to the evidence, locked in prison when they were with her. And if they had any problems, she went to the emergency room. Were any of those arguments made in the initial custody? You mean, I didn't represent him in the initial custody case. He came to me after that. Right. That's correct. Had you looked at the initial contested dissolution case, and were any of these arguments made before the court, when the court awarded the mother custody? Yes. One of the things that happened in the initial custody case that I am aware of through my client, and it's part of the court record, there was a DCF investigation that my client had started, and the DCFS officer had made a founded finding of abuse against Maria. Maria and her attorney appealed that decision, and that decision was overturned on appeal. My client said, and I did not check this out. This is part of the record, though. My client testified, and I haven't checked this out yet, and I could, but I didn't think it was relevant for today's proceeding. My client said that two different courts heard evidence on two different days, several months apart. He said two different judges came in. Now, that could be possible because we did have one judge, Judge Moran, who was sitting in Montgomery County, who became ill and was off the bench. She may have heard the first half, and then another judge heard the second half, but I thought that that was unusual because I would think in that situation, since the case was not completely heard, that the whole case would have to be re-heard. That's what he said. I haven't looked at it to determine whether that's true. The only reason why I ask the question is, obviously, if these complaints were made at the first hearing and the court listened to them, you couldn't use that as a change of circumstances to effectuate the testing change today. And we did not. We did not. The things that we used in court were all things that happened since that judgment was made. And were not argued about any of the parenting skills in the initial custody determination. Well, the parenting skills issue, whether it was argued or not, I can't say. I would imagine that some of the parenting issues were argued. However, you have to remember, when the initial custody judgment was entered, the kids were only two years old, so the experience with a person's ability to parent a child was not as great as it would be after four years. But we argued that the mother didn't show the proper interest and left them with babysitters all the time when they were two years old and made the same argument when they were six years old. That doesn't seem to me to be a change of circumstances. And I can't say that that happened. Don't believe that it did. I think we had specific instances here. Remember, Eduardo was not in the picture at the time of the first hearing.  That was definitely a change of circumstances. And Maria was out hunting down a husband, and that was our position, so she could stay in the United States. And her care of the children, you know, these four-year-olds, who my client potty trained, were still wearing polos when they went to the daycare. And another thing that came out of here... At what age? At four years old. My client said when they were with him, they wore regular underwear. And did they have some type of learning disability? They didn't have a learning disability. As a matter of fact, they tested well. What happened was Maria spoke a lot of Spanish with the children when they were young, so they had a little difficulty with their speech. And, of course, she was able to get a speech therapist to come in. It wasn't one that was paid for, as far as I'm aware. But that did help. But the truth of the matter is, the children basically came out of this problem very quickly.  I was just wondering if they're wearing polos at age four, had anything to do with any kind of learning problems. No, and my client testified it wasn't necessary for them to wear polos. You know, it wasn't the proper thing. Another thing that came out in this case, she didn't even sign them up to go to preschool. They were to start kindergarten the following fall. It would be this fall, I believe. They didn't go to preschool. And she had no excuse for that. None of us went to preschool either. I didn't either. I didn't either. I guess the preschool I went to was in my house. They didn't have it at the time. And, you know, a lot from the future, they may not have it either. But, again, I'm going to get back to the court's order here is clear and concise and thorough, and there is no basis whatsoever on either standard of evidence to reverse the court's ruling. This court did a great job in analyzing the evidence, making rulings regarding evidence, and was clear and concise, and there is absolutely no basis to overturn the court's ruling. Was Judge Paisley the judge that did the disillusion order? No. That judge is retired now. He had to, I mean, Judge Paisley had, I would think, would have to have looked at the basis for what the circumstances were when the original disillusion judge entered the judgment, right? Here's what Judge Paisley said. Several witnesses testified that Maria lacked a motherly instinct, routinely placed her own needs above the children's deeds, and was not a very loving parent. This is in direct contradiction to the trial court's findings during the original disillusion proceeding. That's what you found, right? That's correct. It was in the court order. He mentioned that. So he did review the whole file, and he relied heavily on factors three and eight, and I think appropriately so, and he made his order in due time. And, you know, the justice asked counsel earlier about visitation. You know, is there a visitation schedule now? You know, Maria's seen the kids a couple times, two weekends over holidays since last fall, and hasn't asked for anything else. I mean, you know, that's not evidence for the court to consider, but the question was asked, so I thought I'd answer it. You know, that's somewhat telling, I think. And the bottom line is the court's order is not one that I think this court should overturn. I don't think there's any basis for it, and I think this court works time and diligence. Thank you, sir. Miles, do you have a rebuttal? A few brief points. As the court has called attention during counsel's address to it, we don't know exactly what was said in regards to parenting in the original divorce decree. But I have never, and I'm sure the court is well aware of its own experience, I've never seen a contested hearing in a divorce proceeding where there were children, where the issue of one parent's skills as opposed to the other parent's skills was not raised. So I find it unlikely in the extreme that the original trial court did not have some sort of inquiry, evidence, or testimony presented as to the parenting abilities of either or both parties. I just can't conceive of such a circumstance occurring in the state of Illinois or any other court. That being said, I would call attention simply on page 2 of the order that Mr. Prettner referred to. Judge Paisley, second paragraph says, Since the court has determined that there has been a change in circumstances, the court will proceed to the next step of the inquiry to determine whether modification of custody is necessary to serve the best interests of the children. I would point out in that sentence, he does not state that there is anything affecting the children in that. He's kind of jumped the gun. He said there's been a change in circumstances and that is enough. It's not enough. There's got to be a change in circumstances and a demonstration that it's affecting the children somehow, and the evidence doesn't reflect that in this case. I think the briefs are well positioned on both sides, but I do not agree with Mr. Prettner. And what the record reflects, I do not believe that the record reflects that a reasonable person, and Judge Paisley's position with his training and skill properly took into consideration the statutory code and the precedent of the 101 courts, and I believe that this court should reverse the trial court's decision and give custody back to Ms. Evans on the basis of continuity of the children's lives. Really briefly, as I said, there hasn't been much visitation since this has been going on, but this is an expedited proceeding. We're trying to get this going to get it resolved as quickly as possible, and I asked them why. We haven't gone forward any further on the visitation schedule regardless of what this court decides. There's going to be a permanent visitation schedule entered shortly thereafter. But did your client only visit her children twice since last year? I believe that is correct, Your Honor, but part of that was based upon my advice to let this get resolved and the fact that she had just moved. You didn't advise her not to see her kids. No, I did not, but I told her that I did not want to enter into a permanent or even a solid visitation agreement until after we had resolved her. And I said that I thought that if we did that, it would be potentially inferentially conceding that there had been sufficient change in circumstances to warrant a trial court's decision and that this would be expedited and resolved shortly thereafter, and then we would cross that bridge when we came to it. Thank you. Thank you. Thank you both for your briefs and arguments. We'll take a minute on this item.